UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FORREST GLENN SHUNN,<br><br>               Plaintiff,<br><br>     v.<br><br>GORDON BENSON; CLINICIAN<br>SCHMIDT; LT. DOBLER; and<br>TEREMA CARLIN, WARDEN OF<br>ICI-O,[1]<br><br>              Defendants. | Case No. 1:20-cv-00085-BLW<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

      The Clerk of Court conditionally filed Plaintiff Forrest Glenn Shunn's Complaint

as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now

reviews the Complaint to determine whether it should be summarily dismissed in whole

or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and

otherwise being fully informed, the Court enters the following Order directing Plaintiff to

file an amended complaint if Plaintiff intends to proceed.

**1.     Screening Requirement**

      The Court must review complaints filed by prisoners seeking relief against a

governmental entity or an officer or employee of a governmental entity, as well as

---

[1] Though Plaintiff names three "Doe" Defendants, the caption indicates that the true names of the Doe Defendants are Clinician Schmidt, Lt. Dobler, and Warden Terema Carlin. Therefore, the Court construes the Complaint as asserting claims against Defendant Benson, Schmidt, Dobler, and Carlin, only.

complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## 2.    Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

## 3.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution ("ISCI").

Most of the events giving rise to Plaintiff's claims occurred when Plaintiff was incarcerated at the Idaho Correctional Institution in Orofino ("ICI-O").

According to the IDOC's website, Plaintiff is eligible for parole on April 14, 2021, and his parole hearing will be held sometime in October 2020. *See* IDOC Offender Search, *available at* https://www.idoc.idaho.gov/content/prisons/offender_search (accessed March 31, 2020).

With respect to Plaintiff's prospects for parole, Plaintiff's case manager allegedly told him, on an unknown date, that Plaintiff "would flop parole"—that is, be denied parole—for five years, both because of his sentence and because of the type of person Plaintiff is. *Compl*., Dkt. 2, at 3. Disappointed with the case manager's opinion and prediction, Plaintiff wrote a letter to the parole board "to ask if that were true." *Id*. at 3. Plaintiff also "asked to switch case managers and explained why and showed [Plaintiff's] response letter." *Id*.

Plaintiff contends that prison staff began to retaliate against him because of his letter to the parole board. For example, Plaintiff was not accepted for a prison job, and a nondefendant correctional officer "used [Plaintiff] as his enjoyment, making fun" of Plaintiff. *Id*.

On or before September 3, 2019, Plaintiff was involved in an altercation with another inmate. This other inmate apparently had a prison job as a janitor, perhaps in Defendant Benson's tier. Benson initially told Plaintiff that the altercation was on video and that it "may blow over" or Plaintiff and the other inmate "both might have to move." *Id*. at 3. Later, after talking to staff, Benson "cooked up" a false Disciplinary Offense

Report ("DOR") and issued Plaintiff that DOR based on the altercation between Plaintiff and the other inmate. *Id*. at 2–3. The other inmate was not disciplined. *Id*. at 5. Plaintiff alleges that the DOR improperly "omitted all wrongful actions by other party and lied about the incident." *Id*. at 2. Benson's alleged motive in issuing the false DOR was to punish Plaintiff instead of the other inmate so that the other inmate could keep the janitor job.

The disciplinary hearing officer upheld the DOR. Plaintiff expressed disbelief that the hearing officer watched the video, but the officer informed Plaintiff that the video—although lacking audio—"confirmed" the DOR. *Id*. at 3.

Plaintiff states that he "told all staff of the lies," and he was later denied mental health treatment. *Id*. at 4. Plaintiff sought to speak with Warden Carlin, but he "was denied a sit down." *Id*.

Plaintiff is now classified as medium custody instead of minimum custody, evidently because of the DOR. As a medium custody inmate, Plaintiff cannot work at the prison or at a work camp, and his "parole will flop." *Id*. Plaintiff also states that other inmates who have been in altercations have not been treated so harshly. *Id*. at 4–5.

Plaintiff alleges that he was being seen by Clinician Schmidt for a private medical appointment when Defendant Dobler entered the room. Both Dobler and Schmidt "chewed [Plaintiff] out" and told him that he "better find something to get plugged into or else." *Id*. at 5. Plaintiff told Schmidt that the situation was affecting his mental health, and Schmidt "taunted" Plaintiff in response. *Id*. Plaintiff did not see another medical

provider until he was moved from ICI-O to ISCI and claims that, even after he was

transferred, it took three weeks to see a provider. *Id.*

Plaintiff states that he is asserting (1) civil rights claims under 42 U.S.C. § 1983,

(2) civil rights claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau

of Narcotics*, 403 U.S. 388 (1971), and (3) Idaho state law claims. *Id.* at 1.

**4.      Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court

will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint

should take into consideration the following.

**A.      *Section 1983 Claims***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a

plausible civil rights claim, a plaintiff must allege a violation of rights protected by the

Constitution or created by federal statute proximately caused by conduct of a person

acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or

possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472

(2015). Negligence is not actionable under § 1983, because a negligent act by a public

official is not an abuse of governmental power but merely a "failure to measure up to the

conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages

in their individual capacities under § 1983 unless they personally participated in the

alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see

*also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205–09. A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a municipality (local governmental entity) or a private entity performing a government function—such as the private entity providing medical treatment to Idaho inmates under contract with the IDOC—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of*

*New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). A municipality or private entity performing a state function also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or

damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

      i.      <u>Retaliation Claims</u>

Plaintiff asserts that Defendants retaliated against him because he wrote the letter to the parole board.

A prisoner asserting a First Amendment retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). When analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility to prison officials." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment

activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech; rather, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about the inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for causation" test— that is, if the adverse action would have been taken even without the inmate's exercise of protected conduct, summary judgment for the prison official is appropriate. *Hartman*, 547 U.S. at 260. The United States Supreme Court has described the causation requirement as follows:

> [U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of (such as firing the employee). If there is a finding that retaliation was not the but-for cause of the

> discharge [or other adverse action], the claim fails for lack of
> causal connection between unconstitutional motive and
> resulting harm, despite proof of some retaliatory animus in
> the official's mind.... [A]ction colored by some degree of bad
> motive does not amount to a constitutional tort if that action
> would have been taken anyway.

*Id.* at 260 (internal citations omitted).

Finally, even if a prisoner proves that his protected conduct was the but-for cause

of an adverse action by the defendant official, the prisoner's retaliation claim fails so long

as that action also reasonably advanced a legitimate penological interest. Legitimate goals

of a correctional institution include "preservation of internal order and discipline,

maintenance of institutional security, and rehabilitation of prisoners." *Rizzo*, 778 F.2d at

532. "The plaintiff bears the burden of pleading and proving the absence of legitimate

correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

There is nothing in the Complaint to plausibly suggest a retaliatory motive on the

part of any Defendant. Plaintiff has not alleged how Defendant Benson even could have

known about the letter, as Benson is a correctional officer and not a member of the parole

board. Further, other than Plaintiff's vague and overgeneralized statement that he told "all

staff" about the alleged "lies"—which is insufficient to plausibly establish a retaliatory

motive—the Complaint does not allege how the other Defendants specifically learned of

Plaintiff's letter to the parole board or the DOR.

>    ii.    <u>Due Process Claims</u>

It is unclear whether Plaintiff is asserting a due process claim based on the DOR

and the resulting disciplinary proceedings. Plaintiff also has not explained the discipline

to which he has subjected as a result of the DOR. If Plaintiff intends to assert a due process claim in an amended complaint, he should keep the following standards in mind.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because liberty interests are "generally limited to freedom from restraint," the Supreme Court has held that a prisoner possesses a liberty interest under the federal Constitution only when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

With respect to a procedural due process claim regarding prison disciplinary proceedings and disciplinary segregation, a district court must analyze three factors in determining whether a prisoner has or had a liberty interest in avoiding discipline: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation (such as administrative segregation and protective custody); (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected. *Id*. at 486-87. If these factors are not met, a court may find there is no liberty interest in avoiding prison discipline, which means that a prisoner has no due process claim arising from the disciplinary proceeding. Applying these factors in *Sandin*, the Supreme Court determined that a

prisoner lacked a protectable liberty interest in avoiding 30 days of confinement in disciplinary segregation. *Id.* at 487.

If a prisoner possesses a protectable liberty interest with respect to prison disciplinary proceedings, then a court must consider to what process the prisoner was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). The Due Process Clause requires that the inmate receive notice of the charges against him and an opportunity to respond. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The specific process to which a person is entitled depends on the consideration of three factors: (1) "the private interest ... affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used[] and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

iii. Eighth Amendment Medical Treatment Claims

Plaintiff also appears to assert claims of inadequate medical or mental health treatment. The Eighth Amendment to the United States Constitution protects prisoners

against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical and mental health treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition

> that significantly affects an individual's daily activities; or the
> existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

(en banc).

      As to the subjective standard, "deliberate indifference entails something more than

mere negligence, [but] is satisfied by something less than acts or omissions for the very

purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at

835. A prison official or prison medical provider acts with "deliberate indifference...only

if the [prison official or provider] knows of and disregards an excessive risk to inmate

health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)

(internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los

Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison

official must not only 'be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists,' but that person 'must also draw the inference.'"

*Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at

837).

      In the medical context, deliberate indifference can be "manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally

denying or delaying access to medical care or intentionally interfering with the treatment

once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or

negligence does not support a cause of action under the Eighth Amendment, *Broughton v.*

*Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must plausibly allege that medical providers chose one

treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Other than the impermissibly vague contention that Plaintiff was denied mental health treatment, the Complaint provides no information about Plaintiff's medical treatment or about his underlying health condition. Further, though Clinician Schmidt's bedside manner might have been less positive than what Plaintiff expected, it does not rise to the level of a constitutional violation. Nor does the Complaint plausibly suggest that any Defendant acted with deliberate indifference, that Dobler's coming in during Plaintiff's appointment resulted in a denial of adequate treatment, or that the three weeks he waited to see a provider at ISCI caused further harm.

Plaintiff may attempt to remedy these deficiencies in an amended complaint.

### B.  Bivens *Claims*

In *Bivens*, the United States Supreme Court recognized a cause of action for monetary damages against federal officials in their individual capacities for a violation of constitutional rights. A *Bivens* action is the federal analog to an action brought under § 1983, and a plaintiff asserting a *Bivens* claim must show that the defendant was acting under color of federal law. *Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982).

Plaintiff names only Idaho state actors, not federal actors. Therefore, the Complaint fails to state a plausible *Bivens* claim.

### C.  *State Law Claims*

In addition to § 1983 claims, Plaintiff asserts state law claims, presumably claims of negligence or medical malpractice.

 "In a negligence action the plaintiff must establish the following elements: '(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage.'" *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quoting *Hansen v. City of Pocatello*, 184 P.3d 206, 208 (Idaho 2008)). Additionally, to succeed on a medical malpractice claim, the plaintiff must "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence" that the defendant medical provider "negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided." Idaho Code § 6-1012. A plaintiff asserting a medical

malpractice claim also must first submit the claim to a prelitigation screening panel in accordance with Idaho Code § 6-1001.

Plaintiff's Complaint does not plausibly assert a negligence or medical malpractice claim. Plaintiff's vague statement that he was denied mental health treatment and the fact that he had to wait three weeks to be seen by a medical provider upon his transfer are insufficient, as are the Complaint's allegations that Defendant Schmidt taunted Plaintiff or that Dobler came in during Plaintiff's appointment.

Moreover, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over Plaintiff's state law claims in any event. *See* 28 U.S.C. § 1367(c). If Plaintiff is allowed to proceed on a federal claim in an amended complaint, and if the amended complaint states a plausible state law claim, the Court will reconsider the issue of supplemental jurisdiction.

5.      **Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and

1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or retaliation claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated

thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.      Plaintiff has 28 days within which to file an amended complaint as

        described above. If Plaintiff does so, Plaintiff must file (along with the

        amended complaint) a Motion to Review the Amended Complaint. If

        Plaintiff does not amend within 28 days, this case may be dismissed

without further notice.

2.     Plaintiff's request for appointment of counsel (contained in the Complaint)
       is DENIED without prejudice. Plaintiff may renew the request for counsel
       in an amended complaint.

DATED: April 2, 2020

_____
B. Lynn Winmill
U.S. District Court Judge